461 So.2d 910 (1984)
Danny Lamar PACK
v.
STATE.
6 Div. 117.
Court of Criminal Appeals of Alabama.
October 9, 1984.
On Return to Remand and Denial of Rehearing November 27, 1984.
*911 Gary L. Smith, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen. and J. Anthony McLain and James F. Hampton, Sp. Asst. Attys. Gen., for appellee.
PATTERSON, Judge.
Appellant, Danny Lamar Pack, was indicted for unlawful breaking and entering a vehicle, pursuant to § 13A-8-11(b), Code of Alabama 1975. Appellant was subsequently convicted of the crime charged in this indictment and sentenced to a term of fifteen years' imprisonment in accordance with the Alabama Habitual Felony Offender Act, § 13A-5-9(c)(1), Code of Alabama 1975, after a finding that appellant had at least three prior felony convictions.
Appellant advances the following arguments: (1) The trial court erred in admitting evidence of appellant's commission of another criminal act just prior to the act *912 for which he was indicted; (2) the trial court erred in allowing the State to impeach defense witnesses by questioning, in regard to criminal convictions, beyond the name of the crime, time and place of conviction, and the punishment; (3) the trial court erred in refusing to give the appellant's written jury charge concerning criminal tampering in the second degree; and (4) the trial court erred in its interpretation of the breaking and entering requirements of § 13A-8-11(b), Code of Alabama 1975, and consequently in denying appellant's motion for judgment of acquittal. We reverse and remand with instructions.
Appellant was arrested on October 17, 1981, at the 31 Package Store, located on Highway 31 in Gardendale, Alabama. On that date, appellant was in the company of his younger brother, Malcom Pack, and a friend, Woodson, a black male.
The State presented evidence through Ms. Martha Watson that between 2:00 and 2:30 on the afternoon of October 17, 1981, she was parking her Toyota Corolla in an area near Main Street and Highway 31 when a pickup truck stopped behind her car, blocking any further ingress or egress from the space. According to Ms. Watson, a black male approached her car and told her to leave the keys in the car because they were going to take it. After the black male opened the car door, Ms. Watson got out and observed a white male standing at the rear driver's side of her car. Ms. Watson later identified appellant as the person standing at the rear of her car. Ms. Watson then called to another person in the parking lot to call the police. The black man looked at appellant and the appellant said, "Let's go." Ms. Watson testified that the two men then ran back to a bronze and beige pickup truck and left at a high rate of speed, almost running into another automobile.
The police arrived shortly thereafter and Ms. Watson gave them a description of her assailants and their get away truck. According to Officer Mosier, he had been informed at approximately 3:05 p.m. to be on the lookout for a "beige and bronze .... pickup truck, late model," occupied by two white males and one black male. Shortly after this alert, Officer Mosier observed such a truck occupied by three individuals at the 31 Package Store. The truck was parked beside a red Toyota Corona, which belonged to the store attendant, Anthony Meeks. Upon further investigation the officer saw two white males sitting in the truck and a black male outside the truck "with a tire tool prying on the door of the red Toyota". All three men, including appellant, were then placed under arrest.
State's witness Anthony Meeks testified that the car window had been chipped and scratched but not broken, chrome stripping on the side of the vehicle had been damaged, and the door was bent where it had been pried by the tire tool. The doors were still locked, and apparently no entry had been made into the interior of the vehicle, the trunk, or the engine compartment.
Appellant testified in his own defense and appellant's younger brother, Malcom Pack, testified on behalf of appellant. The two brothers related the same version of facts. The defense testimony indicated that Malcom and appellant delivered a refrigerator that afternoon and then purchased a bottle of rum. After purchasing the rum, they met the black man, Woodson, and were to give him a ride to Warrior, Alabama. Malcom owned the beige and bronze pickup truck in which they were traveling that afternoon. Both admitted being in the same parking lot as Ms. Watson; however, they did not recall seeing her or, at any time, stopping the truck behind her car. Their testimony indicated that Malcom parked some distance away from where Ms. Watson had parked and that appellant entered a Winn-Dixie store to purchase a bottle of 7-Up to mix with the rum. Woodson got out of the truck and when appellant returned, he observed Woodson in the parking lot some distance from the truck. Appellant called to Woodson, who returned to the truck, and they departed in a normal manner, admitting that they "may" have left quickly. Appellant *913 denied ever standing at the rear of Ms. Watson's car.
Appellant and his brother further stated that, within a matter of seconds after parking at the 31 Package Store, police arrived and arrested all three just as Woodson was departing from the truck. According to the two of them neither appellant nor his brother observed Woodson doing anything to the car parked next to them nor did they observe Woodson with a tire tool before or after the arrest.
Woodson did not testify at appellant's trial. Malcom testified on cross-examination, over appellant's objection, that he had pleaded guilty to breaking and entering a vehicle and had received eighteen months' probation. This guilty plea arose out of the same transaction for which appellant was being tried.

I
Appellant's first assignment of error regards the testimony of Ms. Watson describing the events which occurred in the Winn-Dixie parking lot just prior to appellant's arrest at the 31 Package Store. The trial judge allowed this testimony to go before the jury, over appellant's objection, with instructions that this testimony was to be considered by them only for the purpose of determining appellant's intent. Intent was clearly in issue at trial; appellant contended that at no time did he participate in any criminal activity.
Appellant correctly points out that, as a general rule, evidence of other acts which themselves constitute distinct and independent offenses are not admissible, if its only purpose is to show bad character, inclination, or propensity of an accused to commit the type of crime charged or to act in conformance with such bad character, inclination, or propensity. Brewer v. State, 440 So.2d 1155 (Ala.Crim.App.1983); Lucy v. State, 340 So.2d 840 (Ala.Crim.App.), cert. denied, 340 So.2d 847 (Ala.1976); C. Gamble, McElroy's Alabama Evidence, § 69.01 (3d ed. 1977). This general rule is not without several well established exceptions. See Lucy v. State, supra; McElroy's, at § 69.01. This court has recently stated:
"Under exceptions to the general rule excluding evidence which tends to show the commission of a crime other than that for which the defendant is on trial, evidence may be admitted to show motive, intent or scienter.... Under this exception, evidence of other offenses is admissible to show whether the defendant's intent was unlawful or whether it was good and lawful ...; whether the accused acted intentionally or accidentally.... or to show the purpose with which the act was committed.... For a comprehensive statement of the principles involved see Allen v. State, 380 So.2d 313 (Ala.Crim.App.1979), cert. denied, 380 So.2d 341 (Ala.1980)."
Carlton v. State, 415 So.2d 1241, 1243 (Ala. Crim.App.1982) (citations omitted).
Thus, one of the established exceptions to the general rule is that the other crime may be used to show the element of criminal intent in the now-charged crime. Whiddon v. State, 53 Ala.App. 280, 299 So.2d 326 (1973). The court in Whiddon, 299 So.2d at 331, quoting McElroy, Law of Evidence, at 168 (2d ed.), stated:
"Because the unintentional doing of an act is abnormal and unusual, the more a person does other acts similar to the act in question, the greater the likelihood that the act in question was not done inadvertently. Therefore, in certain crimes the state may prove accused's doing of similar acts as tending to show that in doing of a now charged act, he had that intent that is an element of the now charged crime."
See also Pope v. State, 365 So.2d 369 (Ala. Crim.App.1978).
We find that intent was clearly in issue and thus it was not error to admit the testimony of Ms. Watson; the testimony was not introduced solely for the purpose of showing appellant's bad character, inclination, or propensity to commit the type of crime charged. The testimony was clearly relevant to establish that appellant and his cohorts intended to break and enter a vehicle *914 without the consent of the owner. "If an accused is charged with a crime that requires a prerequisite intent, as in the case sub judice, then prior or subsequent criminal acts are admissible to establish that he had the necessary intent when he committed the instant crime." Jones v. State, 439 So.2d 1308, 1310 (Ala.Crim.App. 1983), and cases cited therein.

II
During the State's cross-examination of Malcom Pack, questions concerning Malcom's conviction for breaking and entering a vehicle, arising out of the same transaction for which appellant was on trial, were allowed by the trial court. Appellant contends that this was improper cross-examination and that the State should have been limited merely to questions concerning the name of the crime, time and place of conviction, and punishment. The trial court permitted this testimony on the theory that the State was allowed to show the witness's bias and so instructed the jury of this narrow purpose. We find appellant's argument to be without merit.
The State may properly cross-examine the defense witness concerning the conviction of the same offense, arising out of the same transaction, for which appellant was being tried. This line of questioning was relevant and material for the limited purpose of showing bias against or interest toward the state. Houston v. State, 203 Ala. 261, 82 So. 503 (1919); Stinson v. State, 41 Ala.App. 575, 142 So.2d 897, cert. stricken, 273 Ala. 479, 142 So.2d 899 (1962); Sexton v. State, 22 Ala.App. 16, 111 So. 897, cert. denied, 215 Ala. 533, 111 So. 898 (1927); White v. State, 12 Ala.App. 160, 68 So. 521 (1915).
It should also be pointed out that this line of questioning was obviously proper for another reason. As a general proposition of law it has been stated that "the cross-examining party has the absolute right on cross-examination, not only to inquire as to matters relevant to the issues under the pleading, but also to inquire into the conduct and circumstances of the witness which have measurable bearing upon his credibility". C. Gamble, McElroy's Alabama Evidence, § 136.01 (3d ed. 1977). Malcom's testimony offers an excellent example of circumstances which have a measurable bearing upon credibility. He is before the jury testifying that he and his brother played no part in any criminal activity, yet he has already pleaded guilty to the charged offense and has been sentenced to eighteen months' probation. The evidence elicited by the State was clearly admissible as going to the credibility of the witness.

III
Appellant next contends that the trial court committed reversible error by refusing to give his requested jury charge for the offense of criminal tampering in the second degree, defined in § 13A-7-26, Code of Alabama 1975. He argues that criminal tampering is a lesser included offense of the crime charged, which appellant asserts had a rational basis in the evidence presented. We need not determine if criminal tampering in the second degree is a lesser included offense of unlawful breaking and entering a vehicle. Our disposal of this issue in no way should be construed as reflecting our view of the merits of this proposition, for even if criminal tampering was a lesser offense, we find that the evidence warranted no such instruction. Based on our review of the record, we find that no reversible error was committed by the trial court in refusing the proffered instruction.
Appellant relies on Burns v. State, 229 Ala. 68, 69, 155 So. 561 (1934), for the proposition that "every prisoner at the bar is entitled to have charges given, which without being misleading, correctly stated the law of his case, and are supported by any evidence, however weak, insufficient, or doubtful in credibility." See also Ex parte Traweek, 380 So.2d 958 (Ala.1979); Chavers v. State, 361 So.2d 1106 (Ala. 1978).
This court has held that the defendant is "entitled to have the jury charged on a *915 lesser included offense only where there is a reasonable theory from the evidence to support such a position." Cooper v. State, 364 So.2d 382, 387 (Ala.Crim.App.1978), citing Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973). See also Thomas v. State, 418 So.2d 921 (Ala.Crim.App.1982); Bowman v. State, 44 Ala.App. 331, 208 So.2d 241 (1968). In the recent case of Pruitt v. State, 457 So.2d 456 (Ala.1984), the Alabama Supreme Court stated "The accused is entitled to have the trial court charge on lesser included offenses where there is a reasonable theory from the evidence supporting defendant's position, regardless of whether the State or defendant offers the evidence," 457 So.2d at 457 (citing Chavers v. State, supra.) Further support for this standard of review is found in § 13A-1-9(b), Code of Alabama 1975, wherein it is stated:
"The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."
We find, after considering all the evidence introduced at the trial, that there was no reasonable theory or rational basis to support such an instruction. After a careful review of the record and applicable case law, we are convinced that the trial judge properly denied appellant's requested charge.

IV
Appellant's fourth and final contention is that the State failed to prove a prima facie case of unlawful breaking and entering a vehicle. While appellant concedes that the State did show a breaking, he claims that the evidence presented at trial failed to show there was an entering of the automobile, as required by the statute, § 13A-8-11(b), Code of Alabama 1975.
Section 13A-8-11 reads, in pertinent part, as follows:
"(b) A person commits the crime of unlawful breaking and entering a vehicle if, without the consent of the owner, he breaks into and enters a vehicle or any part of the vehicle with the intent to commit any felony or theft. For purposes of this section, `enters' means to intrude:
"(1) Any part of the body; or
"(2) Any physical object connected with the body; or
"(3) Unlawful breaking and entering a vehicle is a Class C felony."
The State argues that, under the wording of the statute, intrusion of a tire tool into the car door was sufficient to show entry. The trial judge specifically relied upon the wording of this statute in overruling appellant's motion for judgment of acquittal at the close of the State's evidence. The judge stated:
".... I'm going to hold that jamming the crowbar or the tire tool between the door jamb or in the door jamb area there and prying on the door there and the lock area and messing up the weather stripping and so forth, that that is an intrusion into a part of the car."
In his instruction to the jury, the trial judge defined entry to the jury as follows:
"Now, enter in this statute does have a special meaning. Enter means this: To intrude any part of the body. We are talking about a person's body, any part of the body, a hand, a foot or whatever, a finger into the vehicle. That would be to enter the vehicle. Or intrude any physical object connected with the body into any part of the vehicle...."
Upon inquiry by a juror as to the meaning of `enter,' the trial judge stated:
".... It means to intrude any part of the body into a part of the vehicle or to intrude some object into a part of the vehicle or into the vehicle itself."
These instructions were not entirely correct, although a straightforward reading of the statute without considering the case law and legislative history of the statute could give the reader the impression that such an interpretation was correct.
In order to determine the meaning of "enter," we must look to prior case law and the legislative history of the statute.
*916 The commentary to § 13A-8-11(b), Code of Alabama 1975, states that this code section essentially "reinstates the former offense of burglary of motor vehicle, former Section 13-2-42". The commentary also points out the difference between burglary of a building and breaking and entering a vehicle by stating the following:
"Burglary no longer requires proof of a breakingonly an entry. Hence, while a related crime, the conduct here proscribed is not a lesser included offense of any degree of burglary."
Comments, Ala.Code § 13A-8-11(b) (1975) (emphasis added).
Thus, while burglary of a building no longer requires the showing of both a breaking and an entering, the proof of both elements is required to show an unlawful breaking and entering a vehicle under our present statute. Since the Legislature was careful to maintain both the element of breaking and the element of entering into the wording of the statute, it is necessary to explore what the common law distinction was between these two elements. In the case at bar, we are only dealing with the `entry' element of the statute. Appellant has not contested the breaking element, and we conclude that sufficient proof was presented at trial to constitute a breaking. The law governing the use of an instrument to effect entry is in contest here, and has been explained as follows:
"A .... distinction, however, has been made between the entrance of some part of the body and the introduction of a tool or other instrument, with reference to the purpose with which it was put into the building. Where it is a part of the body itself, its insertion into the building is an entry within the rules of burglary, whether the purpose was to complete the felonious design or merely to effect a breaking. Thus if the miscreant should open a window too small to admit his body, and should insert his hand through this opening merely for the purpose of unlocking a door, through which he intends to gain entrance to the building, he has already made an `entry' even if he should get no farther. But where a tool or instrument is intruded, without any part of the person being within the house, it is an entry if the insertion was for the purpose of completing the felony but not if it was merely to accomplish a breaking. If the instrument is inserted in such a manner that it is calculated not only to make a breach but also to accomplish the completion of the felonious design this constitutes both a breach and an entry. Hence, if a shot is fired merely to break a lock, there would be no entry even if the bullet landed inside the building, whereas if the weapon had been discharged for the purpose of killing an inmate of the house the entrance of the ball into the dwelling would be sufficient for an entry as the word is used within the rules of burglary."
R. Perkins, Perkins on Criminal Law, (2d ed. 1969) (emphasis added). These principles are firmly established in the body of Alabama jurisprudence. See Walker v. State, 63 Ala. 49 (1879) ("the inquiry is, whether the tool or instrument was employed solely for the purpose of breaking, and thereby effecting an entry; or whether it was employed not only to break and enter, but also to aid in the consummation of the criminal intent, and its capacity to aid in such consummation," 63 Ala. at 51); Perry v. State, 407 So.2d 183 (Ala.Crim. App.1981) (to constitute entry, an instrument must be inserted for the purpose of perpetrating a felony therein); Robinson v. State, 45 Ala.App. 74, 224 So.2d 675 (1969) ("the act of prying open a door with an iron bar does not constitute an entry, as it is not used for the purpose of committing a felony therein, but merely of breaking," 45 Ala.App. at 78, 224 So.2d at 679).
We are, of course, aware that these cases are applying the entry standard to burglary of buildings. It is clear, however, that the Legislature intended the theory of these cases to apply in the present situation. We are further aided in this result by Texas statutory law. In the committee comments to § 13A-8-11, Code of Alabama 1975, we are directed to Proposed Revision, *917 Texas Penal Code, § 31.06, for insight into subdivision (a)(1) through (a)(4) of § 13A-8-11. Although the comments do not direct us to support for § 13A-8-11(b), Texas has adopted a burglary of vehicles statute, Tex.Penal Code Ann. § 30.04 (Vernon 1974), that is identical to the Alabama unlawful breaking and entering a vehicle statute, § 13A-8-11(b), Code of Alabama 1975. The commentary to the Texas statute states: "The definition of `entry', Subsection (b), is also identical to that of burglary, Section 30.02(b). The punishment, however, is less severe...." Practice Commentary, Tex.Penal Code Ann. § 30.04 (Vernon 1974).
We therefore hold that the language of § 13A-8-11(b), Code of Alabama 1975, indicates a legislative intent to adopt the definitions of entry as defined by Alabama decisional law regarding burglary.
Applying the rules stated above to the fact situation before us, it seems clear that the use of the tire tool, while resulting in a breaking, did not rise to the level of an entry. We interpret the acts of the appellant and his accomplices as an attempt to break into the car rather than a completed act. To rule otherwise would require that we draw no distinction between individuals attempting to break into a vehicle with an instrument and individuals who do actually effect entry into the passenger compartment, engine compartment, trunk, or other part of the vehicle.

V
Although the State's evidence did not show an entry, the State clearly proved each and every element of an attempt to unlawfully break and enter a vehicle. An attempt is defined at § 13A-4-2(a):
"A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act toward the commission of such offense."
An attempt is a lesser included offense of the crime charged. Ala.Code 1975, § 13A-1-9(a)(2).
This court and the Alabama Supreme Court have recently approved authority whereby a case such as this need not be reversed and returned to the lower court for retrial. This court has stated:
".... since the jury returned a verdict on the higher degree, it found the existence of every element of the lesser included offense.... [S]tate and federal appellate courts have inherent authority to reverse a conviction while at the same time ordering an entry of judgment on a lesser included offense.
Edwards v. State, 452 So.2d 506, 507 (Ala. Crim.App.1983), aff'd, 452 So.2d 508 (Ala. 1984) (referring to Dickenson v. Israel, 644 F.2d 308 (7th Cir.1981)). The Alabama Supreme Court, in affirming this court's judgment quoted Dickenson, 644 F.2d at 509, with approval, as follows:
"The usual situation in which this occurs is when there is insufficient evidence to support one of the elements of an offense. A court may be reluctant to overturn an entire conviction when there is ample evidence to support a lesser-included charge which does not contain the insufficiently proven element. The authority to order the entry of judgment on the lesser-included offense is both statutory, see, e.g., 28 U.S.C. § 2016, and based on the common law. The constitutionality of the practice has never been seriously questioned."
Edwards at 509 (citations omitted). The case at bar presents a clear fact situation to which the Edwards doctrine may be applied.
For the foregoing reasons, we reverse and render, in part, the judgment of the trial court, and remand this case with instructions that the trial court enter a judgment of guilty on the charge of attempted breaking and entering a vehicle and sentence appellant accordingly.
REVERSED AND RENDERED, IN PART; REMANDED FOR PROPER SENTENCING.
All Judges concur.

*918 On Return to Remand

PATTERSON, Judge.
Appellant Danny Lamar Pack was convicted of the crime of unlawfully breaking and entering a vehicle pursuant to § 13A-8-11(b), Code of Alabama 1975, and sentenced to fifteen years' imprisonment as a habitual offender. On appeal this court held that the State's evidence failed to prove the essential element of entry into the vehicle. We also held that, although the State's evidence did not show an entry, its evidence clearly proved each and every element of an attempt to unlawfully break and enter a vehicle, and that an attempt was a lesser included offense of the crime charged. Following the procedure approved in Edwards v. State, 452 So.2d 506 (Ala.Crim.App.1983), aff'd, 452 So.2d 508 (Ala.1984), we reversed and rendered the case as to that part of the judgment finding appellant guilty of breaking and entering a vehicle, and remanded the case with instructions that the trial court enter a judgment of guilty on the charge of attempted breaking and entering a vehicle and sentence him accordingly. On October 14, 1984, the trial court, in accordance with the instructions of this court, adjudged the appellant guilty of an attempt to commit the unlawful breaking and entering of a vehicle, and sentenced him to one year at hard labor. The trial court immediately suspended the sentence, stating that "defendant is serving a fifteen year prison sentence in a companion case."
The return to remand has been filed and the record reflects that the trial court has fully complied with the instructions of this court. It follows that the judgment of the trial court finding the appellant guilty of an attempt to commit the unlawful breaking and entering of a vehicle and sentencing him to hard labor for one year and suspending same, is due to be, and the same is hereby, affirmed.
AFFIRMED.
All Judges concur.

On Rehearing
PATTERSON, Judge.
On authority of Pack v. State, 461 So.2d 910 (Ala.Crim.App.1984), the State's application for rehearing in this cause is overruled.
APPLICATION FOR REHEARING OVERRULED.
All Judges concur.